UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

DIANE K. RAMBACHER,

                Plaintiff,

        v.

BEMUS POINT CENTRAL SCHOOL
DISTRICT,

                Defendant.

───────────────────────────────────

<u>REPORT & RECOMMENDATION</u>

01-CV-338A

## <u>PRELIMINARY STATEMENT</u>

By Order of Hon. Richard J. Arcara, Chief Judge, United States District Court for
the Western District of New York, dated November 14, 2006, all dispositive motions in the
above-captioned case have been referred to this Court for report and recommendation pursuant to
28 U.S.C. §§ 636(b)(1)(B)-(C).  (Docket # 43).

Plaintiff Diane K. Rambacher has brought suit against her former employer, the
Bemus Point Central School District (the "District"), alleging that the District discriminated
against her on the basis of her disability, in violation of the Americans with Disabilities Act
("ADA"), 42 U.S.C. §§ 12101 *et. seq.*  (Docket # 18).  Currently before this Court for report and
recommendation is the District's motion for summary judgment.  (Docket # 27).  For the
following reasons, it is my recommendation that the District's motion be granted.

## FACTUAL BACKGROUND

Rambacher was hired by the District as a Library Aide in March of 1980 and ultimately promoted to the position of Computer Coordinator for the District.  (Docket # 28 at ¶¶ 2, 4; # 37 at ¶ 1).  In 1992, Rambacher agreed to assume the duties of Business Manager/Treasurer, in addition to the duties she already held as Computer Coordinator.  (Docket # 37 at ¶ 2).  Although she performed both sets of duties for several years, Rambacher eventually concluded that the combined positions were too burdensome for one employee to handle.  (Docket # 37 at ¶ 3).  On September 5, 1996, Rambacher submitted a written memorandum to Albert D'Attilio, Superintendent of Schools, recommending that the two positions be separated and requesting that she be permitted to continue working as the Computer Coordinator.  (Docket # 28 at ¶ 6; # 37 at ¶ 3).

Later that same month, Rambacher suffered a stroke that resulted in the limited use of her left arm, a limp in her left leg, speech difficulty, short-term memory loss, visual difficulties and hypersensitive hearing.  (Docket # 28 at ¶¶ 7, 11; # 37 at ¶ 4).  Rambacher returned to work after a brief absence and continued to perform the duties of both Computer Coordinator and Business Manager/Treasurer for several months.  (Docket # 37 at ¶ 5).  Several months later, the Board of Education approved the separation of the two positions, and a new District Treasurer position was created.  The Computer Coordinator position was designated as a full-time, non-supervisory position, which was to report to the District Treasurer and the Superintendent of Schools.  On January 23, 1997, Rambacher accepted the position of Computer Coordinator for the 1997-98 school year.  (Docket # 28 at ¶ 8; # 37 at ¶ 6, Exhibit ("Ex.") E).  In

2

mid-March 1997, the District's Board of Trustees appointed Charity Mucha to the position of District Treasurer, and she thus became Rambacher's direct supervisor.  (Docket # 28 at ¶ 9).

Rambacher asserts that when the positions were separated, she lost her private office and was moved to a cubicle in the center of the business office.  (Docket # 37 at ¶ 7).  She also contends that on June 5, 1997, Mucha instituted a "firm" 8:00 a.m. to 4:00 p.m. work schedule, prohibiting Rambacher from working the flexible work schedule that she had previously been permitted to work.  (Docket # 37 at ¶ 8, Ex. F).  In Rambacher's opinion, these changes caused her job performance to fall to a less than acceptable level.  (Docket # 37 at ¶ 10; # 28 at ¶ 14).  She expressed concerns about her performance to Superintendent D'Attilio and requested that she be permitted to work a flexible work schedule and that her workspace be changed.  Specifically, Rambacher requested that the dining space across the hall from the business office be converted into office space that she could utilize.  Her requests were denied. (Docket # 28 at ¶ 14; # 37 at ¶ 10).

On June 17, 1997, Rambacher left work early and was admitted to the Lakeshore Hospital for treatment of depression and suicidal tendencies.  (Docket # 28 at ¶¶ 15-16; # 37 at ¶ 11).  A few days later, Rambacher communicated with Superintendent D'Attilio and explained that she would be unable to work for a period of time due to illness.  (Docket # 37 at ¶ 12).  Rambacher sent another letter on July 20, 1997, stating that she was "still under medical care," was "not able to return to work yet," would return to work "as soon as medically able" and would "bring in a medical note" when she returned.  (Docket # 28 at ¶ 17; # 37 at ¶ 12).

For the next six months, from July 29, 1997 through January 19, 1998, Rambacher was a patient at the Jones Hill Clinic of the WCA Hospital in Jamestown, New York.

(Docket # 28 at ¶ 18).  In a letter to D'Attilio and the School Board, dated December 28, 1997, Rambacher requested an additional six-month leave of absence until July 1, 1998.  (Docket # 28 at ¶ 19; # 37 at ¶ 13, Ex. G).  Notwithstanding her stated intention to return, on January 15, 1998, Rambacher filed an application with the New York State Retirement System for Article 15 Disability Retirement.[1]  (Docket # 28 at ¶ 21).

Before considering her application for a leave of absence, the School Board requested that Rambacher submit "a physician's statement" describing her condition and prognosis for her return to work.  (Docket # 37 at Ex. H).  On February 4, 1998, Rambacher submitted a letter from her treating psychiatrist, Robert Gibbon, M.D.  The letter stated in full:

> As you know, I have been treating Ms. Rambacher since July 29, 1997 – in hospital much of that time.  Diagnosed as Major Depression.
>
> It is my opinion that she is on the mend, and will be able to return to her regular duties (or equivalent) in a few months' time, as depression, even severe (as hers is) is treatable.

(Docket # 28 at ¶ 23; # 37 at ¶ 17, Ex. I).  One week later the Board of Trustees approved Rambacher's request for a six-month leave of absence.  (Docket # 28 at ¶ 25; # 37 at ¶ 18).  That approval was conditioned on Rambacher's agreement "to an examination by a physician and/or psychiatrist chosen by the school district upon either her seeking to return to work or to extend the leave beyond June 30, 1998."  (Docket # 28 at ¶ 25; # 37 at ¶ 18, Ex. K).

Sometime thereafter Rambacher provided the District with a copy of a report of neuropsychological examination conducted by her treating psychologist several months earlier in November 1997.  As to "cognitive functioning," the report stated that Rambacher's "verbal IQ"

---

[1]  In April of 1998, Rambacher filed for Social Security Disability benefits.  (Docket # 28 at ¶ 26).

was in the 32nd percentile rank, that she "struggles with moderate to severe reading difficulties," that "[h]er writing skills . . . represented the greatest area of weakness for her" and that "her short-term attention/concentration was in the deficient impaired ranges." (Docket # 37, Ex. L). The report further noted that she tested in the 9th percentile in arithmetic. (*Id.*). Various areas of strength were also identified, and she was characterized as "a relatively good candidate for (re)training programs so as to enhance her work potential." (*Id.*).

Rambacher alleges that on June 1, 1998, one month before her anticipated return to work, she met with D'Attilio to discuss her return and the accommodations she would need. (Docket # 37 at ¶ 20). According to Rambacher, she expressed to D'Attilio her willingness to submit to the medical examinations required by the District. (*Id.*). Rambacher thereafter sent a letter to the District reiterating her intention to return to work and her willingness to undergo the requested medical examinations. (Docket # 37 at ¶ 21, Ex. M).

Counsel for the District responded by letter dated June 18, 1998, advising Rambacher that her previous position was no longer available due to a reorganization of the administrative staff and that "there [were] no positions available for which she would appear to be qualified." (Docket # 37 at ¶ 22, Ex. N). The letter further noted that based upon a November 1997 report by her treating psychologist, "[i]t is hard to conceive what position could be satisfactorily performed by an employee having this degree of impairment." (*Id.*). The letter concluded by stating that although there were no open positions as of July 1, 1998, if Rambacher wished to be considered for "any suitable position in the future," she must submit to an examination by a psychologist and physician. (*Id.*).

Rambacher submitted a letter of resignation to the District effective July 1, 1998, stating, "The school district's refusal to consider my request for reasonable accommodations has forced me to regretfully accept early retirement." (Docket # 28 at ¶ 27; # 37 at ¶ 23, Ex. O). Also on July 1, 1998, Rambacher's counsel wrote to the District's counsel indicating that Rambacher was willing to submit to a medical examination and asking the District to contact her directly. (Docket # 37 at ¶ 24, Ex. P). By letter one week later, the District questioned the apparent inconsistency between Rambacher's application for and receipt of disability benefits, her request for early retirement and her request to return to work. (Docket # 37 at ¶ 24 at Ex. Q). Following further discussions between the parties during which Rambacher expressed her desire to return to work, the District agreed to meet with Rambacher's psychologist to discuss potential accommodations necessary for her to return to work in some capacity. (Docket # 37, Exs. R, S). On September 3, 1998, before that meeting occurred, Rambacher filed a complaint with the New York State Division of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination in violation of the New York Human Rights Law and the ADA. (Docket # 28 at ¶ 28; # 37 at ¶ 29).

On September 22, 1998, representatives of the District met with Rambacher and her psychologist to discuss recommended accommodations. (Docket # 37 at ¶ 32). The recommendations of Rambacher's psychologist were memorialized in a report identifying general work-related accommodations that Rambacher would require to return to any work capacity, such as decreasing the sensory stimulation in her worksite and increasing the physical support to her right side. The report stated that additional specific accommodations "would also be required depending upon the exact demands of a job" and specifically noted that "supports for

computer use" would need to be increased and would need to be "specified in detail if computer use were part of [her] job description."  (Docket # 37, Ex. U).

        After the meeting, by letter dated October 7, 1998, the District advised Rambacher that the accommodations she requested "could not reasonably be implemented in connection with any position in the District's Business Office."  (Docket # 37 at ¶ 33, Ex. V).  The District offered Rambacher a position as a Library Aide, conditioned upon Rambacher's agreement to provide a medical release to return to work.  Rambacher neither accepted the Library Aide position, nor provided to the District any statement from a physician or psychologist confirming her ability to return to work as a Computer Coordinator, Library Aide or in any other capacity.  (Docket # 37 at ¶ 34; # 28 at ¶ 38).

## DISCUSSION

        Rambacher alleges in her Amended Complaint that the District violated the ADA by refusing to return her to work on July 1, 1998 in the position of Computer Coordinator and by "otherwise failing to accommodate plaintiff's reasonable accommodation requests."  (Docket # 18 at ¶ 16).  The District has moved for summary judgment, contending that Rambacher cannot establish a *prima facie* case of discrimination.  Specifically, the District argues that the indisputable evidence demonstrates plaintiff's inability to prove two of the necessary elements of her *prima facie* case, namely, that (1) she was qualified to perform the essential functions of the job of Computer Coordinator with or without reasonable accommodations and (2) she suffered an adverse employment action because of her disability.  (Docket # 30 at 6).

## I.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reaching this determination, the court must assess whether there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts.  *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can

8

only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll*

*v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

> As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of
> the litigation is carefully limited to discerning whether there are
> any genuine issues of material fact to be tried, not to deciding
> them.  Its duty, in short, is confined at this point to issue-finding; it
> does not extend to issue-resolution. . . .  It must be kept in mind
> that only by reference to the substantive law can it be determined
> whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II.  Analysis

Rambacher's Complaint alleges that the District's refusal to reinstate her to the

Computer Coordinator position following her one-year absence and its failure to reasonably

accommodate her disabilities constituted a violation of the Americans with Disabilities Act.[2]

The ADA provides that:

> No covered entity shall discriminate against a qualified individual
> with a disability because of the disability of such individual in
> regard to job application procedures, the hiring, advancement, or
> discharge of employees, employee compensation, job training, and
> other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  The Act defines "disability" as "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of

---

[2]  Insofar as Rambacher's motion papers may be read to challenge the District's alleged refusal to
accommodate her requests for a separate workspace and a flexible schedule, such a challenge is time-barred because
she did not file her EEOC claim until September 3, 1998 – well over 300 days after the challenged actions, which
occurred no later than June 1997 (Docket # 37 at ¶ 10, # 37-5 at ¶ 13).  *See* 42 U.S.C. § 2000e-5(e); *see also* Docket
# 38 at 3.

such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.

§ 12102(2).

Claims of discrimination under the ADA are subject to the burden-shifting

analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas*

*Dep't of Cmty. Affairs. v. Burdine*, 450 U.S. 248 (1981). *See*, *e.g.*, *Heyman v. Queens Vill.*

*Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir.

1999) (applying *McDonnell Douglas* analysis to ADA claims); *Greenway v. Buffalo Hilton*

*Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (same).  Under that framework, the plaintiff bears the

initial burden of establishing a *prima facie* case of discrimination.  If the plaintiff is able to

satisfy this initial burden, the burden then shifts to the defendant to offer a legitimate, lawful

reason for its action.  Once a lawful, non-discriminatory explanation is articulated, the burden

returns to the plaintiff to prove that the defendant's reason is merely a pretext for discrimination.

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993).  Although the *McDonnell Douglas*

framework temporarily shifts the burden of production to the defendant, "[t]he ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff at

all times remains with the plaintiff."  *Texas Dep't of Cmty. Affairs. v. Burdine*, 450 U.S. at 253;

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507.

To satisfy her initial burden at the summary judgment stage, Rambacher must

make out a *prima facie* case of discrimination; she need not prove her claim by a preponderance

of the evidence.  *Adams v. Rochester Gen. Hosp.*, 977 F. Supp. 226, 231 (W.D.N.Y. 1997).  To

do so, Rambacher must show that : (1) the District is subject to the ADA; (2) she is disabled as

defined by the Act; (3) she is otherwise qualified to perform the essential functions of the job,

10

with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir. 1996); *Muszak v. Sears, Roebuck & Co.*, 63 F. Supp. 2d 292, 298 (W.D.N.Y. 1999). For the purposes of this motion, defendant does not contest that the District is subject to the ADA or that Rambacher has a disability within the meaning of the Act. Rather, the District vigorously contests that the plaintiff has established or could establish that she was qualified to perform the essential functions of the job she sought and that she suffered an adverse employment action because of her disability.

A. **"Qualified Individual" under the ADA:** The District argues that Rambacher cannot establish a *prima facie* case of discrimination because she cannot prove that she was qualified to perform the essential functions of the Computer Coordinator position. According to the District, the record is devoid of any evidence that Rambacher was qualified to perform the essential duties of her job "because there is absolutely no evidence that she was certified by any medical doctor as being physically and mentally able to do so, or that she was cleared by a medical doctor to report back to work as a Computer Coordinator as of any specific date." (Docket # 30 at 6-7). The absence of such certification or release forecloses her claim, the District maintains. I disagree.

Any analysis of this issue must begin with the question whether the District was legally permitted to request a medical examination or a statement from one of Rambacher's treating physicians attesting to her ability to return to the job of Computer Coordinator. Rambacher urges the Court to find that any such demand would violate the ADA's provision prohibiting employers from requiring "medical examinations" or making "inquiries of an

11

employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  (Docket # 37-6 at 13-17).  Again I disagree.

The Second Circuit has interpreted the challenged provision to bar disability-related inquiries unless the employer demonstrates "that the asserted 'business necessity' is vital to its business . . . [and] that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary." *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97-98 (2d Cir. 2003).  In this case, the examination or certification was requested after Rambacher suffered a stroke resulting in significant cognitive impairments, experienced admitted difficulties in performing her duties and eventually left work for a period of over one year during which she received inpatient and outpatient treatment for major depression.  During the course of that treatment, she underwent a neuropsychological evaluation to determine her level of cognitive and communicative functioning.  In addition to the findings described *supra*, the evaluation concluded:

> [Rambacher's] overall testing indicates that as a survivor of a
> stroke she has areas of strengths and weaknesses.  In her areas of
> weakness there is a consistent pattern of verbal processing
> weakness, especially in areas of immediate short term memory and
> comprehension.  Her ability to maintain a sustained attention is
> also weak.  In contrast, there is a consistent pattern of strengths in
> her abstract reasoning and non-verbal processing skills and abilities
> for both her thinking skills and memory.  Moreover, she has a
> consistent strength of being able to learn/recall verbal information
> if given the opportunity to recreate that material in a visual format,
> given repeated trials or exposures of the materials, and if the
> materials are familiar to her.  Furthermore, if the aforementioned
> learning conditions are present, she is able to retain the information
> learned in long-term memory.  This profile makes [Rambacher] a

> relatively good candidate for (re)training programs so as to
> enhance her work potential.

(Docket # 37, Ex. L).

The record shows that the Computer Coordinator was responsible for the District's mainframe computer system; those essential duties included training employees on the system, data input and extraction, maintaining financial and student information and generating various computer reports, such as payroll, accounts payable, attendance and transcripts.  (Docket # 38 at 2, n.1; Docket # 31, Attachment ("Att.") C (Rambacher Deposition) at 106, Att. C (Mucha Deposition) at 17, 33-35, Att. E at Ex. B).  Considering those duties and the substantial impairments noted in the November 1997 report, I find that, at the very least, a triable issue of fact exists whether the District was justified in requiring Rambacher to submit a medical certification or undergo a medical examination as a condition of continued employment with the District.  *See, e.g., Harris v. Harris & Hart, Inc.*, 206 F.3d 838, 844 (9th Cir. 2000) (upholding district court's determination on summary judgment that defendant was justified in refusing to rehire plaintiff without medical release); *Riechmann v. Cutler-Hammer, Inc.*, 183 F. Supp. 2d 1292, 1299 (D. Kan. 2001) (upholding jury's finding that defendant's medical inquiry was based upon business necessity when plaintiff requested return to her original position after having suffered a stroke); *Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F. Supp. 653, 661 (D.P.R. 1997) (holding, as a matter of law, that two-month leave of absence taken by an employee with a known disability justified independent medical examination; "[w]here a medical examination serves to determine an employee's ability to perform her job, the ADA would not prevent the plaintiff's employer from requesting the examination").

Even if no factual dispute existed that the District was justified in requiring a medical certification or examination, Rambacher's failure to satisfy that requirement does not entitle the District to summary judgment. The District maintains that Rambacher's failure to provide the District with a medical certification proves her inability to establish her qualifications to perform the essential functions of the job of Computer Coordinator. (Docket # 30 at 6-7 ("There is no evidence that plaintiff was qualified to perform the essential functions of [her job] . . . because there is absolutely no evidence that she was certified by any medical doctor as being physically and mentally able to do so, or that she was cleared by a medical doctor to report back to work as a Computer Coordinator")). I believe that the District misapprehends this second element of a *prima facie* case of disability discrimination.

The District is plainly correct that Rambacher must adduce sufficient evidence to make out a *prima facie* case that she was qualified to perform the job to which she wished to be reinstated. The law does not require her to meet that burden with proof in a particular form, such as a medical certification or report, even though the District may have been justified in conditioning her return to work on the production of such evidence. It is easy to envision facts that establish an employer's right to request a medical certification, but that also establish a subsequent waiver by the employer of that requirement. In such a case, the employee would be justified in failing to provide the originally-requested certification, and it would be unfair to permit the employer to rely on the absence of such certification as indisputable proof of the employee's inability to perform the job.

In fact, the record in this case reveals several instances in which Rambacher communicated her willingness to submit to a medical examination by a physician and/or

psychiatrist chosen by the District.  (Docket # 37, Exs. M, P).  Indeed, it was the District, not

Rambacher, which deferred the examination, preferring not to "incur the costs associated with

the examinations" until Rambacher clarified her desire to return to work.  (*Id.* at Ex. Q).  Two

days later Rambacher confirmed her desire to return to work, and the parties began to arrange a

meeting with Rambacher's psychologist to discuss her necessary accommodations.  Following

that meeting, the District refused to rehire Rambacher in any position in the business office, but

agreed to hire her as a Library Aide so long as she submitted to a medical examination.  Because

she was unwilling to accept that job, which was compensated at a substantially lower rate than

the position of Computer Coordinator, Rambacher declined the offer and did not undergo the

medical examinations.  On these facts, it would be error to conclude that Rambacher is unable to

make out a *prima facie* case that she was qualified to perform the duties of Computer

Coordinator *simply because* she did not undergo a medical examination that the District itself

postponed until it offered to reemploy her in a completely different position.

　　　　　My finding that Rambacher was not required to produce a medical certification or

undergo a medical examination to establish a *prima facie* case does not, however, relieve her of

the obligation to "present sufficient evidence to create a triable factual issue that [s]he was able

to perform the essential functions of [her] position, with or without accommodation."  *Mazza v.*

*Bratton*, 108 F. Supp. 2d 167, 174 (E.D.N.Y. 2000), *aff'd*, 9 F. App'x 36 (2d Cir.), *cert. denied*,

534 U.S. 887 (2001).  Conclusory, self-serving assertions are insufficient to establish that a

plaintiff is a qualified individual under the ADA.  *See*, *e.g.*, *Glozman v. Retail, Wholesale &*

*Chain Store Food Employees Union, Local 338*, 204 F. Supp. 2d 615, 624 (S.D.N.Y. 2002);

*Daddazio v. Katharine Gibbs Sch., Inc.*, 1999 WL 228344, *5 (S.D.N.Y. 1999), *aff'd*, 205 F.3d

1322 (2d Cir. 2000).  The record in this case contains just such self-serving and conclusory assertions.  Disregarding those, the record is bereft of any competent evidence sufficient to raise a triable issue of fact whether Rambacher was able, with or without accommodations, to discharge the essential responsibilities of Computer Coordinator in July 1998.  For this reason, I recommend that the District's motion for summary judgment be granted.

Although her memorandum of law baldly states that "Rambacher was ready, willing and able to return to work on July 1, 1998" (Docket # 37-6 at 1), she herself makes no such explicit representation in her supporting affidavit.  Even assuming her affidavit is construed to include an implicit representation that she was capable to performing the job of Computer Coordinator in July 1998, it is unaccompanied by any specific proof, medical or otherwise.  At most, she argues that she will be able to establish that she was qualified to perform the job in 1998 through evidence of her ability to do so in 1997.  (Docket # 42-1 at ¶ 14).  The flaw in this argument is that proof that she could perform the job of Computer Coordinator in June of 1997 – before she was treated for major depression requiring hospitalization and a full year's leave of absence – is too attenuated to constitute *prima facie* evidence that she could so one year later.

As previously noted, a neuropsychological examination conducted approximately halfway through her twelve-month absence concluded that Rambacher continued to suffer from certain significant stroke-related impairments, such as language comprehension and short-term auditory memory weaknesses.  Her overall verbal score was in the 32nd percentile rank; her arithmetic score was in the 9th percentile rank.  Three months later, her treating psychiatrist opined only that she was "on the mend" and would "be able to return to her regular duties (or equivalent) in a few months' time."  He submitted no further updates in her progress.

16

Considering the severity of the impairments noted during the course of her treatment, as well as the length of her absence, I cannot find that evidence that she could perform her duties in the Spring of 1997 is adequate *prima facie* proof – in the absence of any other evidence – that she could do so again in 1998 following her one year leave of absence.

Finally, I note that her treating psychologist's summary report of recommended accommodations will not serve to satisfy the wanting proof.  That report addresses in a general manner the types of accommodations necessary for Rambacher to return to *any* job.  It does not attempt to identify those accommodations necessary for her to function as Computer Coordinator, noting rather:

> The goal of the [report] is to facilitate an employer's understanding of the general adaptations that [Rambacher] would need in a work setting.  Specific adaptations and accommodations would also be required depending upon the exact demands of a job.

(Docket # 37, Ex. U).  Indeed, it specifically states that additional accommodations would have to be specified if computer use was part of Rambacher's job duties.  (*Id.*).  In short, I find that the report falls short of constituting *prima facie* proof that Rambacher could discharge the job of Computer Coordinator even with accommodations.

In sum, drawing all reasonable inferences in Rambacher's favor, I conclude that the District is correct that Rambacher has failed to demonstrate a *prima facie* case that she is a qualified individual under the ADA.  I do not reach this conclusion on the basis of the principal argument advanced by the District, namely, that Rambacher failed to provide the District with a medical certification of her ability to perform the job of Computer Coordinator.  Rather, I reach

17

the conclusion because the record is devoid of any competent evidence sufficient to raise a triable

issue of fact that Rambacher could perform the job's essential functions in July of 1998.

       **B.  Adverse Employment Action:**   Although I recommend that the District Court

grant defendant's summary judgment motion on the grounds that plaintiff cannot establish a

*prima facie* case of disability discrimination because she is not a "qualified" individual under the

ADA, 42 U.S.C. § 12111(8), I nonetheless address defendant's alternative arguments in the event

that the District Court disagrees with my conclusion as to the first issue.  Specifically, the District

contends that Rambacher cannot establish the final element of a *prima facie* case, that is, that she

suffered an adverse employment action because of her disability.  To the contrary, I find that a

triable issue of material fact exists as to this element.

       The District's argument as to this issue is related to its first argument.  It

maintains that "the School District's alleged failure to return [Rambacher] to the Computer

Coordinator's position was due to the lack of medical certification and release from any of

plaintiff's qualified . . . physicians and not due to her disability."  (Docket # 30 at 7).  Rambacher

plainly has raised a genuine issue of material fact as to the reason she was not rehired as the

District's Computer Coordinator.  Strong evidence exists to suggest that she was not reinstated to

that position – not because she would not provide a medical release – but because the District

concluded that she could not perform the duties of that position following her stroke, depression

and one-year absence.  Indeed, correspondence between the parties indicates that Rambacher

expressed her willingness to undergo the District's requested medical examination as a condition

of her reemployment as a Computer Coordinator, but that the District deferred that examination.

During the deferral period, the District concluded that "the general accommodations [of her

disability] discussed [between Rambacher, her psychologist and the District] could not reasonably be implemented in connection with any position in the District's business office." (Docket # 37, Ex. V).  On this record, I easily conclude that plaintiff has adduced sufficient evidence to raise a triable issue of material fact that the District decided not to rehire her as Computer Coordinator "due to her disability."

For the same reason, I also reject the District's final argument that "even if plaintiff could establish a *prima facie* case of discrimination, it has proved that its decision was based on a legitimate, non-discriminatory reason for refusing to reinstate her to the Computer Coordinator position, namely, that she failed to submit a medical clearance.  (Docket # 30).  This argument is essentially identical to that raised above and must fail for the reasons already discussed.  Because genuine issues of fact exist relating to Rambacher's alleged failure to comply with the medical clearance requirement, those material issues of fact preclude summary judgment on the final grounds advanced by the District.

## CONCLUSION

For the foregoing reasons, it is the recommendation of this Court that defendant's motion for summary judgment **(Docket # 27)** be **GRANTED** on the grounds that plaintiff has raised no triable issue of fact that she was qualified to perform the essential functions of the position to which she sought reinstatement.

   *s/Marian W. Payson*
            MARIAN W. PAYSON
            United States Magistrate Judge

Dated: Rochester, New York
            June   6   , 2007

19

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
     June   6   , 2007